IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re: ) | |
| ) | Case No. 14-41014 |
| STC Inc., ) | |
| ) | Proceedings Under Chapter 11 |
| Debtor. ) | |

**APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(a)
AND 329 AND FED. R. BANKR. P. 2014(a), 2016 AND 5002 AUTHORIZING
THE EMPLOYMENT AND RETENTION OF LEWIS, RICE & FINGERSH, L.C.
AS ATTORNEYS FOR DEBTOR AND DEBTOR IN POSSESSION**

STC Inc. ("STC"), the debtor and debtor-in-possession, hereby submits this application (the "Application") for entry of an order authorizing STC to employ and retain Lewis, Rice & Fingersh, L.C. ("LRF") as its attorneys. In support of this Application, STC respectfully states as follows:[1]

**Jurisdiction**

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue of these proceedings and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 327(a) and 329 of title 11 of the United States Code (as amended, the "Bankruptcy Code").

**Background**

4. On the date hereof (the "Commencement Date"), STC filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy

---

[1] The facts and circumstances supporting this Motion are set forth in the Affidavit of Brad Cross in Support of First Day Motions, filed contemporaneously herewith.

Code"). STC continues to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

### Summary of STC's Operations and History in McLeansboro, Illinois

5. STC is a family-owned business located in McLeansboro, Illinois, a small community with a population of approximately 3,000 people, located about two hours southeast of St. Louis, Missouri. With 35 full and part-time employees, STC is one of the largest private employers in McLeansboro, with a monthly payroll of approximately $100,000. All of its employees live in, or within a short drive of, McLeansboro.

6. STC has been in business in McLeansboro since 1986, when (under the name of Sun Transformer) it was founded by me, along with my brother and a third person, John Cunningham (who left the company in 1989). After 1989, my brother and I held all the shares of STC. I am currently the sole shareholder of STC.

7. STC's facility consists of a 27,000 square foot building, located at 1201 W. Randolph St., McLeansboro, Illinois, which houses production, research and development, engineering, quality assurance and administrative offices. STC also owns an 8,000 square foot building across the street, located at 205 Wilson Street, which contains additional engineering offices and storage space.

8. STC designs, manufactures and tests custom transformers, inductors, and coils for a wide variety of applications, including aerospace, military and marine industries. Among other products, STC currently designs and manufactures components for GPS-based traffic control preemption systems and specialty electronic components such as transformers, circuit assemblies and micro-controller based products. The sale of traffic control preemption

2

system components, in Canada and the U.S., accounts for approximately 50% of STC's annual gross revenue.

9. Since 1989, STC has produced components for a system known as the EMTRAC system, which enhances public safety by improving first responders' response times to the scene of emergencies and reducing traffic accidents related to the passage of emergency vehicles through intersections. The EMTRAC system also improves travel time on mass transit vehicle routes. STC has obligations to existing EMTRAC customers (many of which are emergency first responders), including warranty service, technical support, and expansion of systems.

10. STC has several ongoing projects delivering Emergency Vehicle and Transit Priority Equipment to metropolitan areas in the United States and Canada. STC continues to provide crucial support services to numerous municipalities, especially with respect to EMTRAC Central Monitor components and software. The support provided by STC is necessary to keep these systems operational, and without the support of STC and its employees, public safety will be jeopardized if STC ceases to operate and/or is forced to lay off its employees and close its doors. The current employees are critical to the support, as they are specifically trained to remotely access numerous municipal traffic networks to support the traffic database systems and make adjustments to STC equipment located in traffic cabinets and vehicles in distant locations. STC's employees have been performing this work for 10 years or more.

11. STC manufactures non-EMTRAC components and subassemblies for other OEM's that are designed by STC to customer specifications. STC is the sole approved

source for manufacturing certain components for use on major civilian and defense aviation programs.

12. STC owns several patents related to components for traffic signal control systems. The patents generally seek to manage traffic at intersections to prevent traffic accidents and reduce deaths caused by traffic accidents and reduce emergency vehicle and transit vehicle travel times.

13. STC thus has a leading position as one of two or three domestic players in a niche business supplying municipalities throughout the country with critical traffic signal priority control system components. STC owns certain industry leading technology, including the patents related to the traffic signal control system components.

14. In the last year, STC has had gross revenues of over $4 million.

15. More complete information regarding STC, its business, the events leading to this chapter 11 case, the collection efforts against STC taken prior to this case and STC's objective in seeking relief under chapter 11 is set forth in the Brad Cross Declaration, which is incorporated herein by this reference.

**Relief Requested**

12. By this Application, STC seeks to employ and retain LRF pursuant to sections 327 and 329 of the Bankruptcy Code as its bankruptcy counsel in this chapter 11 case, as more fully described below. Accordingly, STC respectfully requests entry of an order under sections 327(a) and 329 of the Bankruptcy Code, authorizing it to employ and retain LRF as its attorneys under a general retainer to perform the legal services that will be necessary during its chapter 11 case.

4

13. LRF is particularly qualified to serve as counsel for STC during its chapter 11 case. LRF has performed legal work for STC for approximately one year and thereby acquired extensive knowledge of STC and its business.

14. Since September 2013, LRF has been engaged by STC to render professional legal services and advice with respect to, among other things, STC's efforts to preserve its business and jobs, and restructure its business and existing financial obligations. LRF has assisted STC to prepare for and evaluate various restructuring alternatives. As a result, LRF has performed extensive legal work for STC and acquired extensive knowledge of STC and its business, capital structure, financing documents and other material agreements.

15. In addition, LRF has a wealth of experience in providing legal representation in restructurings and reorganizations and has an excellent reputation for the services it has rendered in chapter 11 cases on behalf of debtors and creditors in St. Louis, southern Illinois, and throughout the United States.

16. STC believes that continued representation by its prepetition general, restructuring and bankruptcy counsel, LRF, is critical to STC's efforts to maximize the value of its business in this proceeding because LRF is familiar with STC's business and legal and financial affairs and, accordingly, is well-suited to guide STC through the chapter 11 process.

17. STC believes that LRF is well qualified and able to represent STC in a cost-effective, efficient, and timely manner. Furthermore, STC's management believes that LRF is well qualified to act on its behalf given its extensive knowledge and expertise in bankruptcy matters as well as its familiarity with STC's operations. LRF has indicated a willingness to act on behalf of STC and to subject itself to the jurisdiction and supervision of the Court.

18. STC seeks to employ LRF under a general retainer because of the extensive legal services that will be required in connection with STC's chapter 11 case and the firm's familiarity with the business of STC. As noted above, STC believes LRF is well qualified and uniquely able to act on STC's behalf.

19. Authorizing the employment and retention sought in this Application on an expedited basis is appropriate in this case. Based on LRF's familiarity with STC's business and the firm's experience and knowledge in the field of business reorganizations under chapter 11, STC believes that continued representation by LRF is essential to STC's efforts in this chapter 11 case.

### LRF's Disinterestedness

20. To the best of STC's knowledge, and as disclosed in the affidavit of John J. Hall, submitted contemporaneously herewith (the "Hall Affidavit"), (a) LRF does not hold or represent an interest adverse to STC's estate and is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and (b) LRF has no connection to STC, its creditors or its related parties herein, except as disclosed in the Hall Affidavit.

21. Except as disclosed in the Hall Affidavit:

   a. Neither LRF nor any attorney at the firm holds or represents an interest adverse to STC's estate.

   b. Neither LRF nor any attorney at the firm is or was a creditor, an equity security holder or an insider of STC, except that LRF

previously has rendered legal services to STC for which it has been compensated as disclosed below.

c. Neither LRF nor any attorney at the firm is or was an investment banker for any outstanding security of STC.

d. Neither LRF nor any attorney at the firm is or was, within three (3) years before the Petition Date, an investment banker for a security of STC, or an attorney for an investment banker in connection with the offer, sale or issuance of any security of STC.

e. Neither LRF nor any attorney at the firm is or was ever a director, officer or employee of STC or of an investment banker of STC.

f. LRF does not have an interest materially adverse to the interests of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in STC or an investment banker specified in the foregoing paragraphs, or for any other reason.

g. No attorney at LRF is related to any United States District Judge or United States Bankruptcy Judge for the Southern District of Illinois or to the United States Trustee for such district or to any known employee in the office thereof.

22.  LRF will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new facts or relationships are discovered, LRF will supplement its disclosure to the Court.

## Scope of Services

23. STC believes that the legal services provided by LRF will not duplicate the services that any other professionals, including other legal counsel handling certain litigation for STC, may provide to STC in this case. LRF is the only bankruptcy counsel for STC. LRF has agreed to use reasonable efforts, including coordinating efforts with any other retained professionals, to avoid duplicating services provided by other professionals advising STC.

24. LRF will provide such legal services as LRF and STC shall deem appropriate and feasible in order to assist STC in the course of this chapter 11 case, including but not limited to the following:

   (i)   advise STC with respect to its powers and duties as debtor and debtor-in-possession in the continued management and operation of its business and properties;

   (ii)  advise STC with respect to corporate transactions and corporate governance, and in any negotiations with creditors, equity holders, and investors;

   (iii) assist STC with respect to employee matters;

   (iv)  attend meetings and negotiate with representatives of creditors and other parties in interest and advise and consult on the conduct of the chapter 11 case, including all of the legal and administrative requirements of operating in chapter 11;

   (v)   take all necessary action to protect and preserve STC's estate, including the prosecution of actions on its behalf, the defense of any actions commenced against the estate, negotiations concerning all litigation in which STC may be involved and objections to claims filed against the estate;

   (vi)  review and prepare on behalf of STC all documents and agreements as they become necessary and desirable;

   (vii) review and prepare on behalf of STC all motions, administrative and procedural applications, answers, orders, reports and papers necessary to the administration of the estate;

(viii) negotiate and prepare on STC's behalf a plan of reorganization, disclosure statement and all related agreements and/or documents and take any necessary action on behalf of STC to obtain confirmation of such plan;

(ix) review and object to claims; analyze, recommend, prepare, and bring any causes of action created under the Bankruptcy Code;

(x) advise STC in connection with any sale of assets; and

(xi) appear before this Court, any appellate courts, and the U.S. Trustee, and protect the interests of STC in connection with this chapter 11 case.

LRF, at the request of STC, may provide additional legal services deemed appropriate and necessary to benefit STC's estate.

### Terms of Retention

25. LRF has agreed to represent STC for compensation paid to LRF based on ninety percent (90%) of the normal hourly rates for each professional, para-professional or other person who performs services for or on behalf of STC. Such fees will be based upon the time necessarily spent in providing the legal services, multiplied by LRF's hourly rates.

26. LRF's individual hourly rates vary according to the degree of responsibility involved and experience and skill required. As of September 1, 2014, the hourly rates for attorneys at LRF for work for STC, after a 10% discount, range from $279 to $495 for partners, $175 to $310 for associates, and $121 to $211 for paralegals. The hourly rates are subject to periodic increases in the normal course of LRF's business, typically as of February 1 of each year, often due to the increased experience of the particular professional.

27. LRF anticipates that the primary attorneys and paralegals working on matters for STC in this case, and its hourly rates are: John Hall ($400); Frank B. Janoski ($450); Larry E. Parres ($463); and Jerina Phillips ($175).

28. The hourly rates set forth above are LRF's standard hourly rates, less a 10% discount, for work of this nature. These rates are set at a level designed to compensate LRF

9

fairly for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses.

29. LRF intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of charges and disbursements incurred in this chapter 11 case in accordance with applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules and orders of this Court.

30. STC has paid LRF an initial retainer in the amount of $10,500, for professional services rendered or to be rendered and charges and disbursements incurred or to be incurred by LRF on behalf of STC in connection with this case. STC is submitting a budget (the "Budget") in connection with its motion to use cash collateral. The Budget is subject to extension, including continuation of the payment of weekly professional fees.

31. In the year prior to the commencement of this case, STC paid Lewis Rice approximately $170,000 in connection with general representation of STC. Of this amount, approximately $40,000 was for restructuring matters. Other than these amounts and the retainer, Lewis Rice has not received any other amounts from STC.

32. LRF will maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services, including copies of appropriate receipts for any individual expenditure in excess of $25.00.

33. LRF will provide STC with monthly statements for services rendered and charges and disbursements incurred. During the course of this reorganization case, the issuance of periodic statements will constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of the representation. STC will be asked to pay LRF the

monthly fee amount in accordance with the Budget within ten days of receipt of the LRF monthly invoice, subject to the customary hold-back in this District, as ordered by the Court.

34. STC believes that the compensation arrangement described herein is reasonable and appropriate for services of this nature and is consistent with the compensation arrangements charged by LRF in other cases in which LRF has been retained to perform similar legal services.

35. Notwithstanding anything contained herein to the contrary, all of LRF's fees and expenses in this case will be subject to approval of the Court upon proper application by LRF in accordance with the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure, Local Rule 2016-2, the fee and expense guidelines established by the United States Trustee and any other applicable requirements.

36. Other than as set forth above, no arrangement is proposed between STC and LRF for compensation to be paid in this case.

37. LRF has no agreement with any entity to share any compensation received, nor will any be made, except as permitted under section 504(b) of the Bankruptcy Code.

### Notice

38. Notice of this Application will be given to the following entities and/or its counsel: (i) prepetition lender, Peoples National Bank (ii) the United States Trustee for the Southern District of Illinois, (iii) the holders of the twenty (20) largest unsecured claims against STC's estate, (iv) Global Traffic Technologies, LLC (holder of a judgment against STC); and (v) certain other parties identified in the certificate of service filed with the Court, including, without limitation, all creditors, if any, who have filed or recorded prepetition liens or security interests

against any of STC's assets (collectively, the "Initial Master Service List") via electronic mail and/or fax, where possible. In light of the nature of the relief requested, STC submits that no further notice is required.

### No Prior Request

39. No prior Application for the relief requested herein has been made by STC to this or any other court.

WHEREFORE, STC respectfully requests the entry of an order (i) authorizing and approving the retention and employment by STC of LRF as its attorneys under a general retainer and pursuant to any budget to be approved in this case, to perform the legal services that will be necessary during its chapter 11 case, with compensation and reimbursement of expenses to be paid as an administrative expense in such amounts as may be allowed by this Court pursuant to the Bankruptcy Code; and (ii) granting such other and further relief as this Court deems just and proper.

Dated this 11th day of September 2014.

Respectfully submitted,

LEWIS, RICE & FINGERSH, L.C.

By: /s/ John J. Hall
Larry E. Parres
John J. Hall

600 Washington Ave., Suite 2500
St. Louis, MO 63101
Phone: (314) 444-7600
Fax: (314) 612-7660
E-Mail: lparres@lewisrice.com
jhall@lewisrice.com

Attorneys for Debtor